## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CR 10-3156 RB |
| | ) | |
| ERIK WALTER WALNY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** came before the Court on Defendant's Motion for Production of Canine Records and for an In-Court/Out-Of-Court Demonstration of Effectiveness (Doc. 27), filed on December 20, 2010.  The Court held a hearing on this Motion on January 11, 2011.  Having considered the arguments of the parties, relevant law, and being otherwise fully advised, the Court denies this motion.

### I.  Background.

According the United States, on January 7, 2010, at approximately 5:45 p.m., Mr. Walny drove into the United States Border Patrol checkpoint on Highway 54, South of Alamogordo in a black Pontiac Firebird with Texas plates.  (Docs. 1 and 28.)  Mr. Walny was alone in the vehicle. Border Patrol Agent Jose Navarro was on duty at the primary inspection area.  (*Id*.)  Agent Navarro greeted Mr. Walny and inquired as to his citizenship. (*Id*.)  Mr. Walny replied that he was a United States citizen.  (*Id*.)

Agent Navarro questioned Mr. Walny as to his origin and destination. (Docs. 1 and 28.)  Mr. Walny replied that he was driving from El Paso to Ruidoso to conduct an inventory for his job and pointed to his hat, which was emblazoned with a company's name.  (*Id*.)  Mr. Walny elaborated that

he planned to spend the night at the home of his employer in Ruidoso, and conduct the inventory the following day. (*Id.*) Agent Navarro asked where the employer lived, and Mr. Walny replied that his employer lived in Ruidoso. (*Id.*) Agent Navarro asked who owned the vehicle. (*Id.*) Mr. Walny replied he had recently purchased the vehicle, but he did not have the registration. (*Id.*) Agent Navarro asked where the registration was, and Mr. Walny replied he forgot it at home. (*Id.*) During the questioning, Agent Navarro observed that Mr. Walny gripped the steering wheel tightly and failed to make eye contract. (*Id.*)

Agent Navarro asked Mr. Walny for consent to search the vehicle. (Docs. 1 and 28.) According to the United States, Mr. Walny consented to a search of the vehicle and he was directed to the secondary inspection area. (*Id.*) At the hearing of January 11, 2011, counsel for Mr. Walny maintained that the scope of consent was limited to a search of the exterior of the vehicle, and he did not consent to a search of the interior of the vehicle.[1]

In the secondary inspection area, Border Patrol Agent Gustavo Arana and Border Patrol Canine, Paco-B, performed a canine search of Mr. Walny's vehicle. (Docs. 1 and 28.) According to the United States, while sniffing outside, Paco-B alerted to the interior of the vehicle. (*Id.*) During a subsequent search of the interior of the vehicle, Agent Arana discovered a blue duffel bag containing twenty-five bundles of marijuana, with a combined weight of 12.58 kilograms. (*Id.*)

The Indictment, filed on November 18, 2010, charges Mr. Walny with possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and(b)(2)(D); and aiding and abetting in violation of 18 U.S.C. § 2. (Doc. 17.)

In his Motion for Production of Canine Records and for an In-Court/Out-Of-Court

---

[1] While it may be dispositive of the Motion to Suppress, the issue of consent is not addressed herein.

Demonstration of Effectiveness, Mr. Walny requests "an order directing the government to produce for inspection and copying all records relating to the certification, training, medical history and reliability of canine 'Paco-B' and for an in court/out-of-court demonstration to determine the effective [sic] of Paco-8's [sic] ability to detect the odor of marijuana." (Doc. 27.)  According to Mr. Walny, he "was in a position to see the dog's demeanor from the start to the finish of the canine inspection and did not see a change in the dog's demeanor." (*Id*.)  Mr. Walny asserts that he cannot adequately prepare for a suppression hearing without the requested materials. (*Id*.)  In his Motion to Suppress, Mr. Walny disputes that the canine alerted and gave Agent Arana probable cause to search the interior of the vehicle. (Doc. 26.)

In its Joint Response to Defendant's Motion to Suppress and Motion for Production of Canine Records and for an In-Court/Out-Of-Court Demonstration of Effectiveness, the United States maintains that the certification of the canine is sufficient to establish the reliability of the canine and invokes the law enforcement privilege with respect to the requested documents. (Doc. 28.)  The United States attached, to its response, a copy of a letter from Jesus M. Maese, Jr., Canine Instructor, El Paso Sector, stating that the canine team of Agent Arana and Canine Paco-B was certified in the detection of, *inter alia*, concealed marijuana, on June 10, 2009, and has been re-certified annually since then. (Doc. 28-1.)  The letter states that the certification was valid as of the date at issue, and the current certification is valid until June 11, 2011. (*Id.*)

Additionally, the United States contends that the law enforcement privilege prohibits disclosure of Border Patrol canine training techniques and methods, the specific target locations Paco-B has been trained to search, the types of contraband Border Patrol canines are trained to detect, and the identity of businesses that volunteer their workspace for canine training. (Doc. 28.)  If the Court is inclined to order production of the canine records, the United States requests that the

Court conduct an *in camera* review of the records, with a Border Patrol Agent present, so the agent can explain the sensitive nature of the records.  (*Id.*)  The United States' assertion of the law enforcement privilege does not extend to the behavior of the dog at the time of the alert.  (*Id.*)

In his Reply to Response to Motions to Suppress and for Production of Records, Mr. Walny contends that consideration of the success of the search leads to a "heads I win, tails you lose" result. (Doc. 37.)  Significantly, Mr. Walny clarifies that he "is merely requesting what the agent is trained to look for as his canine is walking around a vehicle" and "simply requesting what the dog is trained to do when it alerts . . . ."  (*Id.*)  At the hearing of January 11, 2011, counsel for Mr. Walny explained that he wants to discover the behavior of Paco-B that constituted the alert.  Counsel for Mr. Walny stated at the hearing that Mr. Walny does not question Paco-B's reliability.  Rather, Mr. Walny questions Agent Arana's credibility.

At the close of the hearing, the Court directed the United States to submit any documents describing the alert behavior of Paco-B for *in camera* review by January 18, 2011.  The United States submitted a letter and one document for *in camera* review on January 14, 2011.

## III.    Discussion.

 It is well-established that probable cause can be established based on alerts by canines that are qualified, *i.e.*, canines that are trained and certified to detect narcotics.  *United States v. Clarkson*, 551 F.3d 1196, 1203 (10th Cir. 2009); *United States v. Rosborough*, 366 F.3d 1145, 1153 (10th Cir. 2004); *United States v. Kennedy*, 131 F.3d 1371, 1377 (10th Cir. 1997).  At the same time, however, an alert from a canine with a "poor accuracy record," may not create probable cause.  *Kennedy*, 131 F.3d at 1377; *United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir. 1993) (commenting that "a dog alert might not give probable cause if the particular dog had a poor accuracy record.")).  The rationale for this distinction derives from the reliability of the canine to detect, and inform its handler

4

of, the presence of contraband.

> Canine reliability is established by:
>
> the fact that the dog is trained and annually certified to perform a physical skill. When the annual certification process involves actual field testing and grading of the canine's drug-detection skills, the canine's reliability is sufficient for a probable cause determination absent some circumstance that justifies a more complete examination of the canine's skill and performance.

*Kennedy*, 131 F.3d at 1378 (citation omitted).

When the reliability of a canine is challenged, the Court must make an initial determination as to whether the canine in question was qualified. *Clarkson*, 551 F.3d 1204. If the canine has been properly certified, the reliability is presumed absent any evidence to the contrary. Evidence to the contrary "may include that the dog's training or certification was substandard, that the health of the dog was such as to possibly affect reliability, and that the circumstances of the particular search raise issues regarding the dog's reliability." *United States v. Morales*, 489 F.Supp.2d 1250, 1260 (D. N.M. 2007) (Armijo, J.) (*quoting United States v. Lambert*, 351 F.Supp.2d 1154, 1162 (D. Kan. 2004)).

The Tenth Circuit has held that, in a case where a properly certified dog correctly alerts to the presence of contraband, canine training records and related documents are not relevant. *United States v. Gonzalez-Acosta*, 989 F.2d 384, 388-389 (10th Cir. 1993) (affirming district court's denial of request for training records, veterinary records, false-positive/false-negative alert records, and all other records establishing dog's ability to smell where dog was certified and correctly alerted to the presence of contraband). The United States submitted a letter from Jesus M. Maese, Jr., Canine Instructor, El Paso Sector, stating that the canine team of Agent Arana and Canine Paco-B was certified in the detection of marijuana on the date in question. (Doc. 28-1.) Marijuana was found in the vehicle. Neither of these factors is disputed. In the absence of any evidence to the contrary, these factors establish the reliability of Paco-B under controlling Tenth Circuit precedent.

*Gonzalez-Acosta*, 989 F.2d at 388-389.  Therefore, the documents are not relevant and production should not be ordered under controlling Tenth Circuit authority.  *Gonzalez-Acosta*, 989 F.2d at 388-389.

Mr. Walny contends that consideration of the positive outcome of the search leads to a "heads I win, tails you lose" result.  This assessment misses the point.  The controlling factor is whether the canine was reliable.  *Gonzalez-Acosta*, 989 F.2d 388-389.  The correct outcome of the search merely confirms the reliability of the canine after the fact.  Mr. Walny's stipulation to reliability traps him in the following syllogism.  Paco-B is a certified canine.  A certified canine alerts to the presence of marijuana.  Marijuana was present.  Therefore, Paco-B alerted.

Indeed, if marijuana had not been found in the car, the alert would have been unreliable.  For this reason, the law focuses on the performance of the canine in training, rather than in the field.  *See Kennedy*, 131 F.3d at 1375 n. 6 (discussing the problems with using field results as the measure for determining a canine's accuracy).  The annual certification, when it involves actual field testing and grading of the canine's drug-detection skills, gives rise to the requisite reliability, absent evidence that would undermine reliability.  *Kennedy*, 131 F.3d at 1378 (citation omitted). While the certification letter does not include information about the field testing and grading of Paco-B, Mr. Walny has stipulated the dog was reliable so the absence of such evidence is not an issue.

In support of his request for the records, Mr. Walny offers only his lay observation that Paco-B did not alert. Judge Furgeson has noted that a dog alert "is not always an objectively verifiable event. In some instances, an alert is simply an interpretation of a change in the dog's behavior by a human handler." *United States v. Outlaw*, 134 F.Supp.2d 807, 813 (W.D. Tex. 2001) (citing *United States v. Dovali-Avila*, 895 F.2d 206, 207 (5th Cir. 1990) (describing that a trained dog alerts to contraband items merely by taking "a particular position or stance.")).  "A handler must be able to

6

properly interpret a canine's subtle signals." *Outlaw*, 134 F.Supp.2d at 813. At the hearing of January 11, 2011, counsel for Mr. Walny stated that (1) Mr. Walny was approximately forty-five feet distant from the vehicle during the canine search, and (2) Mr. Walny's view was blocked by the vehicle during part of the search. Mr. Walny was not in a position to observe the entire exterior search or subtle cues from the dog indicating alert behavior of Paco-B. Simply put, the fact that Mr. Walny did not perceive a change in Paco-B's behavior does not mean that the dog did not alert and does not impugn the canine's reliability.

Mr. Walny has presented no evidence that Paco-B's training or certification was substandard, that the dog's health was compromised in any manner, or any circumstances that would raise an issue regarding the dog's reliability. Indeed, counsel for Mr. Walny stated at the hearing that he did not challenge Paco B's reliability.

Mr. Walny wants to know the behavior of Paco-B that constituted the alert and what Agent Arana was trained to interpret as an alert. Mr. Walny may inquire about these areas on cross examination of Agent Arana at the suppression hearing. The document submitted by the United States for *in camera* review describes the behavior of Paco-B when he alerts. The Court has reviewed the document *in camera* and has determined that there is no legal basis to keep this document from the defense.

### III.   Conclusion.

Paco-B and Agent Arana were certified on the day in question and marijuana was found in the vehicle. No evidence was presented that Paco-B's training or certification was substandard, the canine's health was compromised, or the circumstances of the search raise an issue regarding reliability of Paco-B. The document submitted by the United States for *in camera* review describes the behavior of Paco-B when he alerts, and there is no legal basis to keep this document from the

defense.  The United States is directed to disclose the document submitted for *in camera* review to defense counsel.  Mr. Walny may inquire, on cross examination at the suppression hearing, about the behavior of Paco-B that constituted the alert and what Agent Arana was trained to look for in an alert.  In that production of any sensitive record is not ordered, it is unnecessary to address the United States' assertion of law enforcement privilege.  Defendant's Motion for Production of Canine Records and for an In-Court/Out-Of-Court Demonstration of Effectiveness is otherwise denied.

      **IT IS SO ORDERED.**

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**